UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANDREW S., | Case No. 2:19-cv-11663 |
| *Plaintiff,* | Nancy G. Edmunds<br>United States District Judge |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | Patricia T. Morris<br>United States Magistrate Judge |
| *Defendant.* | |
| _____/ | |

**REPORT AND RECOMMENDATION TO GRANT THE MOTION FOR ATTORNEY FEES (ECF No. 33) IN PART**

I. **RECOMMENDATION**

For the following reasons, **IT IS RECOMMENDED** that the Court **GRANT** the motion for attorney fees (ECF No. 33) **IN PART**. Specifically, the Undersigned recommends awarding $21,197.20 in attorney fees under 42 U.S.C. § 406(b).

II. **REPORT**

   A. **Background**

This is a social security case. Before the Court is Plaintiff's counsel's motion for attorney fees under 42 U.S.C. § 406(b) (ECF No. 33), which has been referred to the Undersigned (ECF No. 35). Counsel has previously moved for and been denied fees under the Equal Access to Justice Act ("EAJA"). (ECF No. 32).

1

When retaining counsel, Plaintiff signed a contingency fee agreement providing that he would pay counsel a fee comprising of 25% of any past-due benefits that he received from the Social Security Administration ("SSA"). (ECF No. 33-2, PageID.1609). Following motion practice in this Court, the case was remanded for further administrative proceedings. (ECF No. 27). Plaintiff proved successful on remand, and on February 9, 2025, the SSA sent him a Notice of Award outlining his benefits. (ECF No. 33-1). Most pertinently, Plaintiff was awarded past-due benefits in the sum of $172,938. (*Id.* at PageID.1605). The Notice informed Plaintiff that the SSA "withheld $43,234.50 from [his] past-due benefits in case [it] need[ed] to pay [his] representative." (*Id.*). The withheld funds amount to 25% of the past-due benefits.

In the instant motion, Plaintiff's counsel requests an award of $29,550 in attorney fees under 42 U.S.C. § 406(b). (ECF No. 33). The Commissioner "neither supports nor opposes counsel's request." (ECF No. 34, PageID.1614). After the Undersigned's first review of the motion papers, she concluded that the Court would benefit from additional information before ruled on the motion. Accordingly, Plaintiff's counsel was ordered to supplement his motion with a record of the hours spent representing Plaintiff in this Court as well as an affidavit stating counsel's normal hourly billing rate for noncontingent-fee cases. (ECF No. 36). A timely supplemental response was filed providing the required information. (ECF No. 37).

2

**B.     Legal Standard**

In *Gisbrecht v. Barnhart*, 535 U.S. 789, 808–09 (2002), the Supreme Court held "that § 406(b) does not displace contingent-fee agreements within the statutory ceiling; instead, § 406(b) instructs courts to review for reasonableness fees yielded by those agreements."  The Supreme Court approvingly detailed the following considerations as ones that a district court may use when making a reasonableness determination:

> Courts that approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness, have appropriately reduced the attorney's recovery based on the character of the representation and the results the representative achieved.  If the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court.  If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order.  In this regard, *the court may require the claimant's attorney to submit*, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, *a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases*.  Judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review.

*Id.* at 808 (internal citations omitted) (emphasis added).

There is a rebuttable presumption that a contingency-fee agreement with a cap of 25% is reasonable, and such an award should be reduced only when there is evidence of ineffectiveness or when an attorney would receive an inordinate

3

unwarranted windfall. *Lasley v. Comm'r of Soc. Sec.*, 771 F.3d 308, 309 (6th Cir. 2014); *Hayes v. Sec'y of Health & Hum. Servs.*, 923 F.2d 418, 421 (6th Cir. 1991). To avoid such windfalls, district courts may consider the attorney's hours and standard rates in reviewing the reasonableness of contingency fees. *See Gisbrecht*, 535 U.S. at 798 n.6.

Courts in the Sixth Circuit have found no windfall "when, in a case where a contingent fee contract exists, the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market." *Parish v. Comm'r of Soc. Sec.*, No. 13-cv-14410, 2017 WL 3084371, at *2 (E.D. Mich. July 20, 2017) (quoting *Hayes*, 923 F.2d at 422).

> [A] multiplier of 2 is appropriate as a floor in light of indications that social security attorneys are successful in approximately 50% of the cases they file in the courts. Without a multiplier, a strict hourly rate limitation would insure that social security attorneys would not, averaged over many cases, be compensated adequately. . . . Such a result would thwart Congress's intention to assure social security claimants of good representation. . . . [This multiplier] provides a floor, below which a district court has no basis for questioning, under the . . . windfall rule for "minimal effort expended," the reasonableness of the fee. In other words, a hypothetical hourly rate that is less than twice the standard rate is *per se* reasonable, and a hypothetical hourly rate that is equal to or greater than twice the standard rate may well be reasonable.

*Hayes*, 923 F.2d at 422 (citing *Rodriquez v. Bowen*, 865 F.2d 739, 744 (6th Cir. 1989)). If the calculated hourly rate is above this floor, then the court may consider arguments designed to rebut the presumed reasonableness of the attorney fee. *Id.*

C. **Analysis**

While the motion is unopposed, "the Court has an independent obligation to assess the reasonableness of a request for attorney fees under the statute." *Johnson v. O'Malley*, No. 18-12994, 2024 WL 1195516, at *2 (E.D. Mich. Mar. 20, 2024) (citing *Gisbrecht*, 535 at U.S. at 807). The sole concern raised by the instant motion is whether the requested fee award constitutes a windfall.

"The Sixth Circuit has not provided definitive guidance on how district courts should calculate the " 'standard rate.' " *Hostetter v. Comm'r of Soc. Sec.*, No. 3:20-CV-2121, 2024 WL 1638918, at *1 (N.D. Ohio Apr. 16, 2024). Courts have used a variety of methods to calculate the standard rate. For example, in *Ringel v. Comm'r of Soc. Sec.*, 295 F. Supp. 3d 816, 823-24 (S.D. Ohio 2018), the court used the EAJA rate as its primary benchmark, whereas the court in *Sykes v. Comm'r of Soc. Sec.*, 144 F. Supp. 3d 919, 925-26 (E.D. Mich. 2015), used the 95%-rate for public benefits attorney in Michigan. The *Hosteterr* court, meanwhile, "noted that $350 per hour is a typical rate for non-contingent social security work [in the Northern District of Ohio]." 2024 WL 1638918, at *2 (internal quotation marks and citation omitted). Further, as one district court wisely explained after collecting cases demonstrating

5

the range of discretion that courts have in awarding fees, "[t]he key is reasonableness, and the [c]ourt is not constrained here by what others have done, though it will not ignore the wisdom and good sense of comparable reviewers." *Good v. Dudek*, No. 6:16-CV-234-REW, 2025 WL 1166154, at *3 (E.D. Ky. Apr. 22, 2025) (collecting cases).

The Undersigned has reviewed many of the recent opinions on this issue and has concluded that the State Bar of Michigan's 2023 survey results are the most appropriate benchmark for determining the standard rate. This is in line with this District's practices because "courts in this District regularly look to the most recent data from the State Bar of Michigan." *Johnson*, 2024 WL 1195516, at *2. "The State Bar's 2023 survey results indicate that, for public benefits attorneys in Michigan, the median hourly rate was $300, the mean rate was $269, the 75th percentile rate was $450, and the 95th percentile rate was $500." *Id.*

The average hourly rate for a public benefit attorney was most recently $269, and applying the 2x multiplier to this rate produces a rate of $538. Plaintiff's counsel's requested fee award was calculated using an hourly rate of $750, which is higher that the standard rate calculated above. As such, the requested fee award is not *per se* reasonable.

Further, the Undersigned is not persuaded that the requested fee award is otherwise reasonable. While the Undersigned recognizes the concerns that counsel

raises regarding the uncertainty of performing work on contingency, this concern is squarely addressed by the application of the 2x multiplier. Here, Plaintiff's counsel received a positive result for his client and has earned the standard hourly rate as well as the application of the 2x multiplier.

Turning to the final calculation of the fee award, Plaintiff's counsel states that he spent 39.4 hours working on the district court component of this case. (ECF No. 37, PageID.1621). As explained, the Undersigned recommends taking the average rate of $269 and applying the 2x multiplier to reach a rate of $538, which then must be multiplied by the 39.4 hours that counsel spent on the case. The result is a fee award of $21,197.20.

### D. Conclusion

For these reasons, **IT IS RECOMMENDED** that the Court **GRANT** the motion for attorney fees (ECF No. 33) **IN PART**. Specifically, the Undersigned recommends awarding $21,197.20 in attorney fees under 42 U.S.C. § 406(b).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. §

636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 29, 2025                              s/ PATRICIA T. MORRIS
                                                                   Patricia T. Morris
                                                                   United States Magistrate Judge